ACCEPTED
05-17-01300-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/7/2018 5:41 PM
LISA MATZ
CLERK

**NO. 05-17-01300-CR**
**IN THE**
**COURT OF APEALS**
**FOR THE 5ᵀᴴ SUPREME**
**JUDICIAL DISTRICT**
**OF TEXAS AT**
**DALLAS**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

6/7/2018 5:41:30 PM

LISA MATZ
Clerk

**OBED ISAU ZAVALA,**
**APPELLANT**

**V.**
**THE STATE OF TEXAS,**
**APPELLEE**

**Appealed from the 291ST Judicial District Court**
**Dallas County, Texas**
**Cause No. F15-35052-U**
**BRIEF FOR APPELLANT**
**NO ORAL ARGUMENT REQUESTED**

**Sharita Blacknall**
**3131 McKinney Ave. Suite 600**
**Dallas, Texas 75204**
**E:info@blacknallfirm.com**
**T: 214-678-9111**
**F:214-678-9144**
**Attorney for Appellant**

i

**OBED ISAU ZAVALA,**

**APPELLANT**

**V.**
**THE STATE OF TEXAS,**
**APPELLEE**

**TO THE COURTS OF APPEALS:**

**OBED ISAU ZAVALA**, APPELLANT HEREIN, RESPECTFULLY SUBMITS THIS BRIEF IN THE ABOVE STYLED AND NUMBERED CAUSE. APPELLANT PRESENTLY STANDS CONVICTED IN CAUSE NO. F15-35052-U OF THE OFFENSE OF AGGRAVATED ROBBERY, A FIRST DEGREE FELONY, IN THE 291ST JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS, THE HONORABLE STEPHANIE MITCHELL PRESIDING. APPELLANT PRESENTS ONE ISSUE FOR REVIEW.

# TABLE OF CONTENTS

**IDENTITY OF PARTIES**……………………………………..……….....iv

**TABLE OF CONTENTS**…………………………………………….iii

**INDEX OF AUTHORITIES**…………………………………..…….vi

**STATEMENT OF THE CASE**……………………………………………1

**ISSUES PRESENTED**……………………………………………………..2

**ISSUE ONE:**

**I.      The Court Erred When It Allowed Complainant To Plead the Fifth In The Middle Of His Testimony Because By Testifying Complainant Waived His Fifth Amendment Privilege.**

**STATEMENT OF FACTS**..................................................... …..3

**SUMMARY OF ARGUMENT.**.................................................. ....18

**ARGUMENT** .................................................................... …19

**CONCLUSION AND PRAYER** ........................................... …..21

**CERTIFICATE OF COMPLIANCE**…………………………….23

**CERTIFICATE OF SERVICE**…………………………………….24

**IDENTITY OF PARTIES**

Ms. Jessica Trevizo
SBOT NO. 24073105
Mr. Herschel Woods
SBOT NO. 24048899
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 N. Riverfront Boulevard, Lb 19
Dallas, Texas 750207
PHONE: (214) 653-3600
Attorney for State of Texas-Jury Trial

MR. HERSCHEL WOODS
Assistant District Attorney
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
SBOT NO. 24088516
133 North Riverfront Boulevard, LB 19
Dallas, Texas 75207
PHONE: (214) 653-3600
Attorney for State of Texas-Jury Trial

MR. MICHAEL SNIPES
Assistant District Attorney
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
SBOT NO. 18797900
133 North Riverfront Boulevard, LB 19
Dallas, Texas 75207
(214) 653-3600
Attorney for State-Punishment Phase

Mr. Thomas Cox
THE LAW OFFICE OF THOMAS R. COX III
SBOT NO. 04956487
2603 Oak Lawn Avenue, Suite 230
Dallas, Texas 75219
PHONE: (214) 526-5600
Attorney for Defendant-Jury Trial

MR. TYLER CARLETON
Attorney at Law
THE LAW OFFICE OF TYLER CARLETON
SBOT NO. 24076088
3131 McKinney Avenue, Suite 600
Dallas, Texas 75204
(214) 649-4605
Attorney for Defendant-Jury Trial

MR. OBED ISAU ZAVALA
TDC# 02170112
County Bench Warrant
No Unit Assigned
DEFENDANT/APPELLANT

MS. SHARITA BLACKNALL
SBOT NO. 24038768
3131 McKinney Ave., Suite 600
Dallas, Texas 75204
Telephone: (972) 383-9716
FOR THE APPELLANT

# INDEX OF AUTHORITIES

**Cases**

*Draper v. State*, 596 S.W.2d 855, 857 (Tex. Crim. App. 1980)………………..21

*Taylor v. Illinois*, 484 U.S. 400, 409, 108 S. Ct. 646, 653, 98 L. Ed.2d 798 (1988)…………………………………………………………………………21

**Statutes, Codes, Rules, Constitutions**

Tex. Penal Code 29.03……………………………………………………..…..3

TEX. R. APP. P. 44.2(a)………………………………………………….…..20

Sixth Amendment U.S. Constitution………………………………………….21

Fourteenth Amendment U.S. Constitution…………………………………21

Art. I, sec. 10, of the Texas constitution………………………………….21

# STATEMENT OF THE CASE

## No. 05-17-01300-CR

## Trial Cause No. F15-35052-U

**THE CHARGE**   Aggravated Robbery

**THE PLEA**      Not Guilty

**THE VERDICT**  Guilty

**PUNISHMENT**   15 YRS TDCJ-ID and No Fine

**ISSUE PRESENTED**


**ISSUE NUMBER ONE:**


**THE COURT ERRED WHEN IT ALLOWED COMPLAINANT TO PLEAD THE FIFTH IN THE MIDDLE OF HIS TESTIMONY BECAUSE BY TESTIFYING COMPLAINANT WAIVED HIS FIFTH AMENDMENT PRIVILEGE.**

**STATEMENT OF FACTS**

Appellant was indicted for aggravated robbery, in Cause No. F15-35052-U, a first-degree felony alleged to have occurred on December 5, 2015, under Tex. Penal Code 29.03. (CR1, 13). He pleaded not guilty to the charge and was tried by a jury on October 24, 2017 in the 291st Judicial District Court of Dallas County. (RR2, 4). The jury found him guilty and on October 26, 2017 the court sentenced him to fifteen years confinement in the Texas Department of Criminal Justice Institutional Division with a fine of $0. (CR1, 88; RR4, 223 ).

Appellant timely filed a notice of appeal on October 26, 2017. (CR1, 92).

Both sides gave opening arguments. Then testimony began. (RR3, 13-19).

The State called the Complainant. The complaining witness in this case is JOSHUA KARAMVELLIL. At the time of the offense, he was 22 years old. He was living with his mother and he was selling marijuana. (RR3, 44-45). He testified that he met Appellant through a mutual acquaintance who introduced them because Complainant was looking to sell a large amount of marijuana and the mutual acquaintance knew Appellant as someone who bought large quantities of marijuana. (RR3, 45-46).

Appellant and Complainant met at Complainant's house on that date of the offense at about 1:00 p.m. or 2:00 p.m., but no later than 5:00 p.m. (RR3, 47). When

they met Appellant asked Complainant whether he had any guns and Complainant told him that he did. (RR3, 46). However, Complainant testified that he really did not have guns and just said that so he did not appear to be a "pussy." (RR3, 46). During this initial meeting Appellant and complainant agreed on a price. They also agreed to meet again at 11:00 p.m. that day because Complainant did not have the marijuana at that time. (RR3, 47, 49). After this initial meeting Complainant left to go run errands. (RR3, 47).

When Complainant returned home from running errands his mother was home. (RR3, 49). She was in her room asleep. (RR3, 51).

Complainant's former co-worker, Kevin Guerrero, was at Complainant's home. He came over to listen to music. (RR3, 52).

Appellant and Jaime Gutierrez arrived shortly after Kevin. (RR3, 53). Complainant went outside to talk to Appellant. Complainant told Appellant that he could not come in the house with Jaime. Appellant left to go drop Jaime off. Appellant came back about 3 minutes later. (RR3, 54).

Complainant and Appellant go in the house and sit down at the table. Complainant begins to roll a blunt so that Appellant can try the marijuana. Appellant begins to count the money he brought to purchase the marijuana. But, Complainant

4

notices that it looks like it is less than the amount agreed upon. Then, Appellant announces that he is going to the car to get some more money. (RR3, 54-55).

Less than 10 seconds after Appellant walks out the door, someone named Colton Price, Jaime Gutierrez, and Appellant walk back in. Colton and Jaime both had on ski masks and had weapons. The weapons were pointed at both Complainant and Kevin. (RR3, 56).

Appellant instructs Colton and Jaime to tie Complainant and Kevin up. Colton and Jaime tie up Kevin and Complainant using duct tape. (RR3, 57-58).

Appellant, Colton and Jaime then went around the house taking items that belonged to Complainant. The items were placed in duffel bags that belonged to Complainant. The items taken included: phones, tablets, fake Rolex watches, and money. (RR3, 59-60).

Appellant, Colton and Jaime left the house and then a few seconds later ran back in because the police were coming. (RR3, 62-63).

Upon arrival, the police secure the house and remove Complainant's mother from the house. (RR3, 63).

Complainant is then taken down to the Irving Police Department to give a statement. (RR3, 63).

While making his statement to the detective, Complainant told the detective that Appellant was selling drugs to him. (RR3, 77). Complainant later told the detective and prosecutor that he made that up and that he was actually selling marijuana to Appellant. (RR3, 77).

During his testimony Complainant discussed his criminal history. He testified that at the time of his testimony he had a pending assault charge, was currently on probation for possession of marijuana, and shortly before the robbery he was charged with 2 counts of DWI. (RR3, 48-49).

The Defense cross-examined Complainant. During cross examination Complainant stated that he agreed to sell 10 pounds of marijuana to Appellant. (RR3, 87). Appellant and Complainant agreed on a price of $20,000. (RR3, 88). Complainant stated he had less than 1 pound of marijuana despite telling Appellant he would sell him 10 pounds. (RR3, 87). The Defense advanced the theory that Complainant was intending to steal the $20,000 from Appellant and never intended to sell Appellant 10 pounds of marijuana. (RR3, 93).

The State called Complainant's mother, Saly Karamvellil. She stated that she was home asleep on the night of the offense. She was awakened by a loud noise. She looked out her window to see what it was. She saw 2 masked men with guns pointed at her son. She then went to her bathroom and called 9-1-1. (RR3, 21-22).

6

Then Appellant opened the bathroom door. He turned the light on, looked at Saly, then turned the light off, and closed the door without saying anything. (RR3, 23-24).

After police arrived, Saly came out of the bathroom. She saw Kevin and her son tied up with the duct tape. (RR3, 25). She then ran outside through the front door where she saw the police. (RR3, 25).

The Defense cross-examined the witness.

The State called Kevin Guerrero. He and Complainant were co-workers at McDonalds. (RR3, 132). On the day of the offense he went to Complainant's house to work on a music project. (RR3, 133).

Kevin testified that when he got to Joshua's the guys that robbed them were already in the house. He stated that the guys left and came back a couple minutes later. When they came back they pointed guns at him. (RR3, 134, 137). Two of the guys had on masks. (RR3, 138). The two guys with the masks tied up Kevin and Joshua. Then, they ransacked the house and robbed them. (RR3, 138).

Kevin stated that Joshua never had a gun. (RR3, 138).

The Defense cross-examined Kevin.

The State called Detective Chad Valline. On the day of the offense he was on patrol when he received a call for a robbery in progress. (RR3, 154). He was the first officer to arrive. He parked his car at the end of the street and walked down to the scene. (RR3, 155). He waited for backup. Officer Byrd and Officer Wojcik came to assist. (RR3, 156).

Two individuals with guns ran out of the house. Detective Valline told them to drop their guns. (RR3, 156). The two individuals dropped their guns and the bags they had in their hands. (RR3, 156).

The officers then went inside the house. Once inside they noticed that 2 individuals ran out the back door. (RR3, 157).

They secured the house. Then had Saly, Kevin and Joshua complete written statements. (RR3, 160).

Detective Valline then had the victims cell phones pinged in hopes that the suspects had the phones on their bodies and could be located. (RR3, 161).

About 30 minutes after the suspects ran out the back door, Detective Valline heard gunshots. (RR3, 162).

The Defense cross examined the witness.

8

The State called Detective Kyle Fleischer. He was dispatched to the scene the day of the offense to take possession of the narcotics. (RR3, 166).

The Defense cross-examined the witness.

The State called Lieutenant Chris Watkins. He was the supervisor on duty the day of the offense. (RR3, 174). He heard the call on the radio and went to the scene. (RR3, 175).

Upon arrival he grabbed his shotgun. He heard noises in the adjacent yard, so he went to clear it. (RR3, 175-176).

He noticed that the suspects were running in different directions, so they used more officers than usual. (RR3, 176).

He became aware that the helicopter and the K9 unit were in route. So, he and the other officers began clearing the yards in the neighborhood. (RR3, 177).

At some point one of the victims' phones was pinged. The helicopter went to the location and identified two suspects huddled against a wall in one of the back yards. (RR3, 181). The suspects took off running over fences. Lieutenant Watkins grabbed one of the suspects as he was climbing over the fence. The suspect was shot by officers on the other side of the fence. (RR3, 182). The other suspect hid under a porch. (RR3, 182). The SWAT team came out and this was the end of Lieutenant Watkins involvement. (RR3, 185).

The Defense cross-examined the witness.

The State called Sergeant Ed Vanderveen. He heard the call on the radio for a robbery in progress and went to the scene. (RR3, 195). When he arrived, he rallied the officers to set up a perimeter, he called for K9, and a helicopter. He then turned the team over to another sergeant. (RR3, 196).

The Defense cross-examined the witness.

The State called Officer Conrad Trezza. On the date of the offense he was a full time SWAT officer. (RR3, 208). When he arrived, he saw a suspect under a deck. He sent a robot in to get a response from him. The robot was unable to get a response.(RR3, 211). So, they started shooting foam bullets at the suspect to try to get a response. (RR3, 212). The suspect eventually crawled out after being hit. (RR3, 213).

The Defense did not cross-examine this witness.

The State called Juan Cervantes. He is an investigator with Dallas County District Attorney's Office. (RR3, 215). He photographed the Defendants tattoos prior to trial. (RR3, 216). The State moved to admit the photo of the tattoo. The Defense objected during pre-trial and the Judge noted that objection. The Court admitted the photo. (RR3, 216-217, SX258). He stated that the tattoo was the words "Texas Crook."

The Defense did not cross-examine this witness.

The State called Saben Emery, a state trooper in the aircraft operations division. (RR3, 218-219). On the day of the offense he was the passenger in the helicopter that was attempting to locate the suspects. He was operating a camera with a thermal laser. (RR3, 221-222). He recorded the capturing of one of the suspects and the officer involved shooting of the other suspect. (RR3, 223). The video was admitted without objection. (RR3, 225, SX2).

The Defense did not cross-examine this witness.

The State called Officer Eric Gustafson. He was on patrol the day of the offense. (RR4, 16). He responded to the robbery in progress information he heard on the radio. (RR4, 17). He was one of the officers that located the suspects in one of the backyards. (RR4, 17). One of the suspects emerged from the northwest corner of one of the houses. The suspect started shooting at Officer Gustafson and the other officers he was with. (RR4, 22). Officer Gustafson also participated in the arrest of Jaime Gutierrez, who was under the porch. (RR4, 25).

The Defense did not cross-examine this witness.

The State called Brett Behrends. He is a crime scene investigator for Irving Police Department. (RR4, 27). He was called out to the scene to take photographs the day of the offense. (RR4, 28).

The Defense cross examined this witness.

The State called Officer Vance Barnes. He is an investigator with the Irving Police Department. (RR4, 47). He was the first crime scene investigator to arrive. (RR4, 48). He located several pieces of evidence including the duct tape, masks, and marijuana. He photographed and documented everything. (RR4, 48).

The Defense cross-examined this witness.

The State called Detective John Schingle with the Irving Police Department. (RR4, 58). When he arrived on the scene the suspects were already in custody and one suspect was deceased. (RR4, 59-60). He assisted with processing the officers involved in the shootings. (RR4, 61). He also made the decision not to test the guns found at the scene because he was told the suspects wore gloves. (RR4, 63). He sent the ski masks for testing. (RR4, 64). The DNA results came back to Colton and Jaime. (RR4, 66). The duct tape was not tested. Det. Schingle that it unnecessary since the suspects wore gloves. (RR4, 67). Det. Schingle conducted a lineup for Joshua and Kevin. All three suspects were positively identified. (RR4, 67). He interviewed Appellant but was unable to obtain any pertinent information. (RR4, 68). Det. Schingle pulled Appellant's jail calls. (RR4, 77-78). During the jail calls Appellant discussed the fact that the day of the offense he stashed the guns that he and the other suspects possessed. (RR4, 81).

The Defense cross examined this witness.

The State rested. (RR4, 85).

A hearing was held outside the presence of the jury regarding which of Defendant's prior criminal history would be admitted. The Court ruled that the State would only be able to impeach Defendant with a burglary of a habitation conviction that was on his record. (RR4, 91).

The Defendant was admonished regarding his right to testify. He declined to testify. (RR4, 91).

The Defense called Complainant. (RR4, 96). He testified that at the time of his testimony in this case he was on probation for possession of marijuana and driving while intoxicated in Denton County.(RR4, 96).  He stated that at the time of his testimony he had an assault charge, interference with an emergency call  and DWI pending. (RR4, 97).  He testified that the marijuana stolen by Appellant from him belonged to him. (RR4, 97-98).

The State did not cross-examine this witness.

The Defense rested. (RR4, 100).

A charge conference was held and there were no objections. (RR4, 100).

The State gave closing argument. (RR4, 109).

The Defense gave closing argument. (RR4, 116).

The jury came back with a guilty verdict. (RR4, 133).

The jury was released, and the punishment phase began. (RR4, 136).

The State called Sergeant Royce Gastineau with the Decatur Police Department. (RR4, 137). On the night of November 14, 2014, he was a patrolman. He was dispatched to an apartment complex. It was alleged that there was a disturbance, and someone had been pistol whipped and robbed. (RR4, 139). Upon arrival he noticed people sitting in a red Yukon. (RR4, 142). Appellant was in the vehicle. Officer Gastineau mirandized him. (RR4, 143). He denied being involved in the robbery. (RR4, 145). Appellant was not arrested for robbery. (RR4, 147). The passenger Christian Arroyo was arrested. (RR4, 147).

The Defense cross-examined the witness.

The State called Officer Rodney Flake with the Decatur Police Department. (RR4, 149-150). He testified that he was called out to the same scene as Officer Gastineau and that they arrested Mr. Arroyo. (RR4, 149-154).

The Defense cross-examined the witness.

The State called Darren Hodge, an investigator with the Dallas County District Attorneys Office. (RR4, 156). It was stipulated that he is a fingerprint

14

expert. (RR4, 157). He compared Appellant's fingerprints to those in prior judgments. (RR4, 159-165).

The Defense cross-examined the witness.

The State called Officer Joe Bradford with the Irving Police Department. On April 25, 2015 he responded to a call that someone was driving erratically. (RR4, 169). He came across a car driven by Appellant. A car chase ensued through a neighborhood. (RR4, 171). Appellant's vehicle wrecked out several times and crashed into a tree and vehicle. (RR4, 172). Appellant was arrested for felony evading arrest. (RR4, 174).

The Defense cross-examined the witness.

The State called Officer Ryan Turner with the Irving Police Department. (RR4, 176). He was one of the officers that responded to the call on April 25, 2015 with Officer Bradford. He hurt his hand and had to go to the hospital as a result of punching Appellant in the face as he was attempting to arrest him. (RR4, 178-180).

The Defense did not cross-examine this witness.

The State called Officer Jared Sykes with the Irving Police Department. (RR4, 181). He was one of the officers called out to the evading arrest charge on April 25, 2015. (RR4, 182).

The Defense did not cross-examine this witness.

The State rested. (RR4, 183).

The Defendant was admonished regarding his right to testify. (RR4, 184). The Defendant decided to testify. (RR4, 185).

The Defense called Defendant, Obed Zavala. (RR4, 186). He testified that he is 28 years old, he has his GED, and a certificate for Diesel Technician from Lincoln Tech. He stated that he is also a tattoo artist. (RR4, 188).

He testified that the tattoo "Texas Crook" signifies the name of a record label that he and some friends were attempting to start. (RR4, 189).

He testified that he met Joshua through a mutual friend. (RR4, 191). He stated that he and Joshua made an agreement that Joshua would sell him 10 pounds of marijuana. (RR4, 191). Joshua never told him that he only had 1 pound of marijuana. (RR4, 192). He stated that he brought $20,000 to the meeting at Joshua's house on the date of the offense. (RR4, 192). When he arrived Joshua and Kevin were present. (RR4, 192). Joshua told him he only had 1 pound but could go get the rest. So, Appellant left to go eat dinner and came back. (RR4, 192-193).

When Appellant came back Joshua only had 1 pound. So, he handed him the money for the 1 pound when Joshua pulled a gun on him. (RR4, 193). Appellant grabbed the gun and Colton hit Joshua. (RR4, 193). Appellant handed the gun to

Colton after taking it away from Joshua. (RR4, 194). They then tied Kevin and Joshua up with duct tape. Appellant did not wear a mask. (RR4, 194). Appellant saw the police when he was leaving . (RR4, 194).

The State cross-examined the witness.

The Defense called Valerie Zavala, Appellant's sister. (RR4, 207). She testified that Appellant is a good brother who has always been there for her. She also stated that Appellant had a baby on the way that he needed to be there for. (RR4, 208-209).

The State did not cross-examine the witness.

The Defense called Leslie Garza, the mother of Appellant's unborn child. (RR4, 210-211). She testified that Appellant is a good person. She stated that she did not want to raise her baby by herself. (RR4, 211-212).

The State cross-examined the witness.

The Defense rested. (RR4, 214).

Both sides closed. (RR4, 214).

Both sides gave closing argument. (RR4, 215-222).

The Court sentenced Appellant to 15 years TDC. (RR4, 223).

## SUMMARY OF ARGUMENT

The Court erred when it allowed Complainant to invoke his Fifth Amendment privilege after he had waived it by testifying.

**ARGUMENT**

I.     **THE COURT ERRED WHEN IT ALLOWED COMPLAINANT TO PLEAD THE FIFTH IN THE MIDDLE OF HIS TESTIMONY BECAUSE BY TESTIFYING COMPLAINANT WAIVED HIS FIFTH AMENDMENT PRIVILEGE.**

The State called Joshua KARAMVELLIL, Complainant as a witness. During direct examination Complainant gave complete testimony regarding his version of the facts. (RR3, 44-81). The State asked Complainant whether he had a pending assault charge. Complainant responded that he did. (RR3, 48). During cross-examination the Defense asked Complainant questions regarding his criminal history. Specifically, Complainant was asked about the pending assault charge. During his testimony he admitted that he had an assault charge pending. (RR3, 97). However, when he was asked about the details of the assault the State objected and the Court sustained the objection. (RR3, 97-98). The State also asked the Court to instruct the jury to disregard the question and the Court so instructed. (RR3, 98-99).

A hearing was held outside the jury's presence regarding eliciting testimony of Complainant's pending assault. The Defense proffered what it would ask Complainant. The Defense further stated that Complainant gave unsolicited testimony that he was not a violent person and therefore his pending assault,

19

interference with an emergency call, and deadly conduct cases were relevant. (RR3, 101-103). The Court ruled that the Defense was not allowed to go into the underlying details of the charges, but could ask whether the charges were pending. (RR3, 105).

Following a lunch break, the Court announced that it was reversing its earlier ruling and would allow the Defense to ask about the underlying facts of Complainant's pending assault and deadly conduct charges. (RR3, 122). The Court also announced that it had appointed Complainant an attorney to advise him regarding his testimony. (RR3, 123). That attorney announced that Complainant would no longer continue to testify and was invoking his Fifth Amendment privilege not to incriminate himself. (RR3, 123).

The Defense asked the Court for permission to ask Complainant some questions outside the presence of the jury. The Court allowed it. During questioning Complainant responded by invoking the Fifth Amendment. (RR3, 124-125).

Appellant contends that the Court erred by allowing complainant to plead the Fifth because by testifying he waived his Fifth Amendment privilege.

When there is a constitutional error the Appellate Court must reverse unless it is determined beyond a reasonable doubt that the error made no contribution to the conviction. TEX. R. APP. P. 44.2(a).

The Court should have compelled Complainant to testify, instead of allowing Complainant to claim the privilege he had already waived. Because Complainant had waived the privilege, Appellant was entitled to present Complainant's testimony. See *Draper v. State*, 596 S.W.2d 855, 857 (Tex. Crim. App. 1980); see also *Taylor v. Illinois*, 484 U.S. 400, 409, 108 S. Ct. 646, 653, 98 L. Ed.2d 798 (1988). The trial judge erred by not compelling Complainant to continue testifying and the error was constitutional. *Draper*, 596 S.W.2d at 857. The denial of compulsory process of witnesses is a violation of the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, sec. 10, of the Texas constitution.

When there is constitutional error, the appellate court must reverse unless it determines beyond a reasonable doubt that the error made no contribution to appellant's defense. . TEX. R. APP. P. 44.2(a). It cannot be said that the error was harmless because that testimony was important to appellant's defense that (1) Complainant was a violent person (2) Complainant pulled a gun on appellant (3) Complainant was the one who was attempting to rob Appellant.

## CONCLUSION AND PRAYER

Wherefore, premises considered, appellant prays that this honorable Court will find the evidence insufficient to support the conviction, reverse the

21

conviction and render judgment of acquittal, or take such other and further actions the Court deems appropriate.

Respectfully Submitted,

/s/Sharita Blacknall
Sharita Blacknall
Texas Bar No. 24038768
3131 McKinney Ave., Suite 600
Dallas, Texas 75204
Phone: 214-678-9111
Fax:     214-678-9144
ATTORNEY FOR APPELLANT

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 3,790 words based upon the word count function of Microsoft Word 2003, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/Sharita Blacknall
Sharita Blacknall

## CERTIFICATE OF SERVICE

This is to certify that a copy of the above-entitled and numbered appellant's brief has been served on the District Attorney of Dallas County, by delivery of a true copy to him/her *by mail by a letter properly addressed to the address below/ or / in person on* June 7, 2018 at the:

Dallas County District Attorney's Office
Appellate Division
Frank Crowley Courts Building
Dallas, Texas 75207
Ph: (214) 653-3600
Fax: (214) 653-5774


/s/Sharita Blacknall
Sharita Blacknall


**cc:**


5th District Court of Appeals Dist. Ct. App.